T.C. Memo. 2015-47

UNITED STATES TAX COURT

BALVIN ANTHONY MCKNIGHT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20844-13.                    Filed March 16, 2015.

Balvin Anthony McKnight, pro se.

Kirsten E. Brimer, for respondent.

MEMORANDUM OPINION

LAUBER, Judge:  With respect to petitioner's Federal income tax for 2011,

the Internal Revenue Service (IRS or respondent) determined a deficiency of

$76,638 and an accuracy-related penalty of $15,328.  The case presents three

questions for decision:  (1) whether distributions from petitioner's qualified retire-

ment plan were includible in his gross income; (2) whether petitioner is liable for

[*2] the 10% additional tax under section 72(t)[1] on early distributions from a qualified retirement plan; and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a). Respondent has moved under Rule 121 for summary judgment on all issues, contending that there are no material facts in dispute and that he is entitled to judgment as a matter of law. We agree and accordingly will grant the motion.

## Background

There is no dispute concerning the following facts. These facts are derived from the parties' pleadings and motion papers and from the declaration and attached exhibits filed by respondent in support of his summary judgment motion. Petitioner resided in Pennsylvania when he petitioned this Court.

Petitioner was a participant in the Lockheed Martin Salaried Savings Plan, a qualified retirement plan. State Street Retiree Services (State Street) was the custodian of petitioner's account with this plan. During 2011 State Street issued petitioner two Forms 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. The first Form 1099-R reported a "gross distribution" of $4,984; categorized the distribution as an "early

---

[1]All statutory references are to the Internal Revenue Code in effect for the tax year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[*3]** distribution, no known exception"; reported $4,984 as the "taxable amount"; and reported "tax withheld" as zero. The second Form 1099-R reported a "gross distribution" of $206,515; categorized the distribution as an "early distribution, no known exception"; reported $206,515 as the "taxable amount"; and reported "tax withheld" as $48,303. Petitioner is now 50 years old and was 47 when he received these two distributions.

During 2011 petitioner had outstanding tax liabilities for 2007 and 2008. On October 14, 2011, the IRS posted payments to petitioner's 2007 and 2008 accounts of $5,555 and $26,488, respectively. IRS records establish that these payments, totaling $32,043, resulted from funds remitted pursuant to a levy. The financial institution that remitted these funds was Wachovia Bank, N.A., then a unit of Wells Fargo. Petitioner's checking account statement from Wells Fargo for the month ending October 12, 2011, shows a "subtraction" of $32,043, dated September 19, 2011, and bearing the description "IRS Notice of Levy."

Petitioner filed a Federal income tax return for 2011 reporting retirement distributions of $206,516, of which he listed $48,304 as the "taxable amount," and claiming a refund of $33,538. (What petitioner reported as the "taxable amount" roughly corresponds to the $48,303 that State Street reported as the "tax withheld.") Upon examination of this return, the IRS determined that petitioner had

**[*4]** failed to report the initial retirement distribution of $4,984 from State Street; that his aggregate retirement distribution of $211,499 was includible in gross income; that he was liable under section 72(t) for additional tax equal to 10% of the retirement distribution includible in gross income; and that he was liable for an accuracy-related penalty under section 6662(a). The IRS timely mailed petitioner a notice of deficiency setting forth these determinations, and petitioner timely sought review in this Court. On November 19, 2014, respondent filed a motion for summary judgment, to which petitioner has responded.

## Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). Rule 121(d) provides that where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's

[*5] pleading," but rather must set forth specific facts, by affidavits or otherwise, "showing that there is a genuine dispute for trial."

Petitioner asserts that there exist disputes of fact as to "the amount of the disbursement" that he received in 2011, as to whether "significant taxes were withheld from the disbursement to cover the tax liabilities," and as to whether his retirement plan was "garnished by the IRS to cover a 2008 tax liability." Petitioner has failed to establish a genuine dispute of material fact concerning the amount of retirement distributions he received in 2011, $211,499, or the amount of tax that State Street withheld from these distributions, $48,303. These sums are clearly set forth in the Forms 1099-R that petitioner received and State Street furnished to the IRS.[2]

Petitioner has likewise failed to establish a genuine dispute of material fact as to whether any portion of these distributions was "made on account of a levy

_____

[2]Section 6201(d) provides that the IRS in certain circumstances cannot rely solely on information returns to establish unreported income but "shall have the burden of producing reasonable and probative information" in addition thereto. This provision applies only were the taxpayer "asserts a reasonable dispute with respect to any item of income reported on an information return" and only if "the taxpayer has fully cooperated with the Secretary." Petitioner has not asserted a reasonable dispute concerning the amounts of retirement income reported by State Street; indeed, he self-reported the second distribution of $206,515. Nor did petitioner fully cooperate with respondent, for example, in preparing a pretrial stipulation of facts in this case.

[*6] under section 6331 on the qualified retirement plan." See sec. 72(t)(2)(A)(vii). IRS records and petitioner's bank statements show that the IRS took action to collect his 2007 and 2008 tax liabilities by levying, not on his retirement plan, but on his checking account with Wachovia Bank/Wells Fargo. We conclude that there exists no genuine dispute as to any material fact and that this case is appropriate for summary adjudication.

B.      Taxability of Retirement Distributions

Section 402(a) provides that "any amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72 (relating to annuities)." The facts establish that $211,499 was actually distributed to petitioner in 2011 by State Street, the custodian of petitioner's account with Lockheed Martin Salaried Savings Plan, a qualified retirement plan. This sum was taxable to petitioner unless some exclusion applies.

Section 402(c)(1) provides a "rollover" exception to this general rule. It excludes from gross income any portion of a distribution that is transferred to an "eligible retirement plan" as defined in section 402(c)(8)(B). Section 402(c)(3) provides that the rollover exclusion is not available for "any transfer of a distri-

[*7] bution made after the 60th day following the day on which the distributee received the property distributed." Thus, to qualify for the rollover exclusion, petitioner must show that he transferred some portion of the distributions he received, within 60 days of receipt, to another eligible retirement plan.

During the IRS examination, petitioner contended that he rolled over $95,000 of the distribution from State Street into an ING retirement fund. But he has failed to furnish, either to the IRS or to this Court, any documentation of such a rollover, and he has failed to set forth specific facts showing that there is a genuine dispute for trial concerning this issue. The only document he supplied was an "account profile" showing a balance of $47,185 in an ING account at year-end 2012. This document does not establish that petitioner rolled over $95,000 (or any other amount) to an ING qualified plan during 2011, much less that he effected a rollover within 60 days of receiving the distributions from State Street. Because petitioner has raised no genuine dispute for trial concerning his entitlement to a rollover exclusion, and since he has suggested no other exclusion that could conceivably apply, the $211,499 of retirement distributions that he received from State Street is includible in his gross income for 2011.[3]

---

[3]Petitioner asserts that he used $20,000 of the retirement distributions to make repairs to the foundation of his home. This assertion, if true, has no bearing

(continued...)

[*8] C.　　　Additional Tax on Early Distribution

A taxpayer who receives a distribution from a qualified retirement plan before the date on which he attains age 59-1/2 is generally subject to a 10% additional tax, computed upon "the portion of such * * * [distribution] which is includible in gross income." Sec. 72(t)(1), (2)(A)(i). Section 72(t)(2)(A)(vii) sets forth, among other exceptions to this rule, situations where distributions are "made on account of a levy under section 6331 on a qualified retirement plan." Petitioner contends that this exception applies here because the IRS levied on his State Street account to collect his outstanding tax liabilities for 2007 and 2008.[4]

Petitioner offers no factual support for this contention. IRS records establish that on October 14, 2011, the IRS posted payments of $5,555 and $26,488 to petitioner's 2007 and 2008 accounts, respectively, and that these funds were remitted pursuant to levy. But IRS records also establish that the financial institution that remitted these funds was not State Street, which was the custodian of peti-

---

[3](...continued)
on whether the distributions were includible in gross income.

[4]Section 7491(c) shifts the burden of production to the Commissioner "with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title." This provision does not shift the burden of production to the Commissioner with respect to the additional tax under section 72(t) because that additional tax is a tax and not a penalty, addition to tax, or additional amount. El v. Commissioner, 144 T.C. ___ (Mar. 12, 2015)

**[\*9]** tioner's qualified retirement account, but Wachovia Bank, then a unit of Wells Fargo, with which petitioner had an ordinary checking account. Petitioner's Wells Fargo bank statement confirms that it subtracted $32,043 from his checking account on September 9, 2011, because of an "IRS Notice of Levy." It may be that petitioner deposited a portion of the State Street distributions into his Wells Fargo account.[5] But a subsequent IRS levy on that account obviously does not establish that there was "a levy under section 6331 on the qualified retirement plan" or that the distributions from State Street to petitioner were "made on account of a levy" within the meaning of section 72(t)(2)(A)(vii). Because the levy exception is inapplicable, and because petitioner does not contend that any other exception in section 72(t)(2) has relevance here, we conclude that the 10% additional tax applies to the full amount of the retirement distributions that petitioner received.

## D.   Accuracy-Related Penalty

Section 6662 imposes a 20% accuracy-related penalty on any underpayment attributable to any substantial understatement of income tax. Sec. 6662(a), (b)(2). An understatement is "substantial" if it exceeds the greater of $5,000 or 10% of

---

[5]Petitioner's Wells Fargo statement for the period ending September 12, 2011, shows a checking account deposit of $158,454 on August 26, 2011.

[*10] the tax required to be shown on the return. Sec. 6662(d)(1)(A). The tax deficiency set forth in the notice of deficiency, which we have sustained in full, is $76,638. This amount exceeds 10% of $117,279, the amount of tax required to be shown on petitioner's 2011 return, which is greater than $5,000. Respondent has thus carried his burden of production by demonstrating a "substantial understatement of income tax." See secs. 6662(b)(2), 7491(c).

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to * * * [it]." Once the Commissioner has carried his burden of production, the taxpayer bears the burden of proving reasonable cause and good faith. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."

**[\*11]** <u>Ibid.</u> "Reasonable cause" may also be shown by demonstrating reliance on the advice of a competent tax professional. <u>Id.</u> para. (c).

Petitioner on his 2011 tax return reported receipt of retirement distributions in excess of $200,000; he had no colorable basis for taking the position that only $48,304 was taxable. Indeed, he appears to have reported as the "taxable amount" the amount that State Street reported to him as the "tax withheld." The contentions he advanced in this Court--that he made a $95,000 rollover contribution and that the IRS "garnished" his retirement plan account--have no factual basis. And he does not contend that he relied on the advice of a competent tax professional or that he is entitled to any reductions of the penalty under section 6662(d)(2)(B). We accordingly sustain respondent's imposition of an accuracy-related penalty for 2011.[6]

---

[6]Petitioner contends that State Street "on behalf of the IRS withheld an amount that would have exceeded the tax liability of the total disbursement." State Street did withhold $48,303 of Federal income tax from the $206,515 distribution; this reflected the typical 20% withholding plus an additional amount withheld at petitioner's request. However, because petitioner reported only a small portion of the distributions as taxable, he claimed on his return, and received from the IRS, a substantial refund of tax, $33,538, for 2011. Thus, while the amount of withholding petitioner requested was reasonable, his subsequent treatment of the retirement distributions on his tax return was not.

**[*12]** To reflect the foregoing,

<u>An appropriate order and decision for respondent will be entered</u>.