[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11847
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-00060-MP-GRJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM J. DICKERT,

Defendant-Appellant,

VICKI MICHELLE DICKERT,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 13, 2016)

Before MARCUS, WILLIAM PRYOR, JR., and JORDAN, Circuit Judges.

PER CURIAM:

In district court, the government successfully sought, on summary judgment, to reduce to judgment William J. Dickert's unpaid federal income tax, penalties, and interest assessed for the 1999 tax year, and to foreclose its federal tax lien on Mr. Dickert's property. Proceeding *pro se*, Mr. Dickert argues on appeal that the district court erred in granting the government's motion for summary judgment and denying his motions for summary judgment and for reconsideration, by concluding that he did not meet or rebut the presumption that the IRS made a valid tax assessment, and by failing to consider evidence that was susceptible of being presented in admissible form (and which showed the IRS' tax assessment—based upon a zero cost basis—was incorrect). Mr. Dickert also argues that the district court erred by denying his motions to compel discovery. Upon review of the record and consideration of the parties' briefs, we affirm.

**I**

Mr. Dickert did not file a federal income tax return for tax year 1999. Consequently, the IRS computed his tax liability for that year based on information reported to it by third parties and prepared an examination report explaining the taxes and penalties it proposed to assess against him. This report was sent to Mr.

Dickert on November 21, 2003, and advised him that he had 30 days to agree with or challenge the proposed taxes and penalties.  Mr. Dickert did not respond.

On February 27, 2004, the IRS issued Mr. Dickert a notice of deficiency explaining its calculation of his income tax deficiency and providing him with an opportunity to contest the deficiency in United States Tax Court.  Again, Mr. Dickert did not respond.

Several months later, on July 19, 2004, a representative of the Secretary of the Treasury assessed Mr. Dickert's income tax deficiency for the 1999 tax year ($137,983.00), plus penalties ($41,114.31) and interest ($54,124.89).  An additional penalty ($34,436.96) for failure to pay tax was assessed in November of 2007.

On September 16, 2005, the IRS prepared a "Notice of Federal Tax Lien" (NFTL) to be filed against Mr. Dickert's property at 787 S.E. 964 Street, Old Town, Florida.  A week later, the IRS sent Mr. Dickert a notice titled "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320."  In response, Mr. Dickert requested a collection due process hearing to appeal the filing of the NTFL, arguing that he was not a taxpayer and that the IRS did not have authority to file tax liens.  On April 4, 2006, the IRS informed Mr. Dickert that it had sustained the filing of the NTFL and advised him of his right to seek

3

review in Tax Court.  Mr. Dickert did not avail himself of this opportunity for review.

The government filed this action against Mr. Dickert in March of 2011.  The parties filed cross-motions for summary judgment.  In his opposition to the government's motion for summary judgment, Mr. Dickert challenged, for the first time, the gross income figure alleged by the government to be investment income, arguing that according to figures he received from his broker, Edward Jones, at least $91,396.54 (the purchase price he paid for stocks that were sold in 1999) should have been deducted from this figure.  The government moved to strike the single-page Edward Jones document submitted by Mr. Dickert in support of his argument, arguing that it was not properly authenticated pursuant to Federal Rule of Evidence 901(a), that it was not self-authenticating under Rule 902, and that it constituted inadmissible hearsay.  In his opposition to the government's motion to strike, Mr. Dickert submitted his own declaration stating that he directed Edward Jones to sell certain stocks and bonds in 1999, which it did, and that he had requested the additional attached documents from Edward Jones showing these sales.

The magistrate judge issued an order setting a telephonic hearing to address two discrete issues in the parties' summary judgment motions.  The first issue, raised in Mr. Dickert's motion for summary judgment, was that the record did not

4

reflect whether the IRS sent the notice of deficiency to Mr. Dickert via certified mail, in accordance with 26 U.S.C. § 6212(a). The second issue concerned the evidence Mr. Dickert submitted concerning the cost basis of the securities whose sale gave rise to the 1999 tax liability. Mr. Dickert failed to appear telephonically at the scheduled hearing. The hearing proceeded, as there was no indication that the notice of hearing mailed to Mr. Dickert had been returned, and the government represented that it telephoned and emailed Mr. Dickert prior to the hearing, but received no response.

At the conclusion of the telephonic hearing, the magistrate judge provided each of the parties additional time to supplement their respective motions to address these two issues. In the corresponding written order, the magistrate judge noted, in particular, that the grounds raised in the government's motion to strike Mr. Dickert's evidence of cost basis were correct, but because Mr. Dickert was proceeding *pro se*, he would be provided with an opportunity to submit admissible, non-hearsay evidence within a specified time period. The order warned the parties that no further supplements or filings would be permitted after the deadline. In accordance with the deadline provided by the magistrate judge, the government supplemented the record with evidence of its sending the notice of deficiency to Mr. Dickert via certified mail. Mr. Dickert, however, failed to file any supplemental materials regarding his evidence concerning the cost basis.

The magistrate judge issued a report and recommendation granting the government's motions to strike and for summary judgment, and denying Mr. Dickert's motion for summary judgment. The magistrate judge concluded that the government established the validity of its tax assessment (which was based on the total sale price of the securities) through its submission of a copy of a "Certificate of Assessments, Payments, and Other Specified Matters" (known as a Form 4340) for the tax year 1999 and documentary evidence of mailing, and that Mr. Dickert did not meet his burden of proving the assessment was arbitrary or incorrect. With respect to Mr. Dickert's proffered evidence of the cost basis for the securities sold in 1999, the magistrate judge concluded that the records were "insufficient to defeat a motion to strike because the problems identified by the United States — the fact that the documents are not self-authenticating and have not been authenticated by an affidavit from an employee of Edward Jones, and the fact that the records are pure hearsay."

Mr. Dickert failed to file any objections to the magistrate judge's report and recommendation, and, on March 27, 2013, the magistrate judge's report was adopted by the district court. On April 29, 2013, the district court granted the government's unopposed motion to amend judgment to specify the amount of judgment to be entered against Mr. Dickert and to order foreclosure of the federal tax lien.

On April 30, 2013, Mr. Dickert filed a Rule 59(e) motion, asking the district court to reconsider the grant of summary judgment in favor of the government. In support of his motion, Mr. Dickert submitted additional documents—obtained from Edward Jones and Janus Fund and certified as business records by employees of both firms—and argued that these documents showed that at least $153,393.19 in the purchase price for stocks sold in 1999 should be deducted from the government's calculation of his gross income, thereby rendering the IRS' tax assessment for tax year 1999 invalid. Although Mr. Dickert admitted to receiving these documents "some days" after filing his own motion for summary judgment one year earlier (in April of 2012), he claimed that he was not notified of the telephonic hearing before the magistrate judge. Nor was he aware of the opportunity to submit supplemental filings. The district court denied Mr. Dickert's motion for reconsideration because it was based on arguments previously raised and rejected.

## II

Generally, we review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmovant. *See Ross v. Clayton Cnty.*, 173 F.3d 1305, 1307 (11th Cir. 1999). However, where a magistrate judge issues a report and recommendation and a party fails to object to it, we review "the facts laid out by the magistrate judge only for plain error or

manifest injustice," and we review *de novo* "the magistrate judge's conclusions of law if they were accepted and adopted by the district court." *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1308 (11th Cir. 2013) (citations omitted). In addition, we may affirm the district court's grant of summary judgment on any ground that is supported in the record, *see Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001), and, generally, will not consider an issue that is raised for the first time on appeal, *see Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). Although we liberally construe a *pro se* litigant's filings, we nonetheless require *pro se* litigants to conform to procedural rules. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

"We review evidentiary rulings made by the district court for abuse of discretion and will reverse the district court's decision only in cases where substantial prejudice exists." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1259 (11th Cir. 2004) (citation omitted). Likewise, we review for abuse of discretion a district court's denial of a Rule 59(e) motion. *See Lambert v. Fulton Cnty.*, 253 F.3d 588, 598 (11th Cir. 2001). An abuse of discretion exists if the district court made a clear error of judgment or applied an incorrect legal standard. *See Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159 (11th Cir. 2004).

A Rule 59(e) motion must be filed within 28 days after the entry of judgment, but it may not be used to present evidence or raise arguments that could

8

have been presented or raised prior to the entry of judgment. *See* Fed. R. Civ. P. 59(e); *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005).

## A

"In reducing an assessment to judgment, the Government must first prove that the assessment was properly made. The Government's submission of a Form 4340 establishes such a presumption. Once the Form is provided, the taxpayer must then prove that the assessment is erroneous in order to prevail." *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006) (internal citations omitted).

On appeal, Mr. Dickert raises a host of arguments why the Form 4340 submitted by the government is untrustworthy and inaccurate. Mr. Dickert, however, failed to object to the magistrate judge's finding that the government established that its assessment was valid and enforceable through its submission of the Form 4340 and other documentary evidence. We, therefore, review for plain error or manifest injustice. *See Owusu-Ansah*, 715 F.3d at 1308. In doing so, we find that none of Mr. Dickert's arguments "rebut[] the Form 4340's presumption of validity" or "seriously impeach the accuracy of the [g]overnment's allegations." *White*, 466 F.3d at 1248–49.

In his motion for summary judgment and in his opposition to the government's motion for summary judgment, Mr. Dickert noted that the Form

9

4340 contained no entry or mailing information concerning the issuance of a notice of deficiency in accordance with 26 U.S.C. § 6212(a). The magistrate judge held a hearing and required supplemental submissions of evidence on this very issue. The government's evidence included: (1) the February 27, 2004 notice of deficiency, a copy of which was submitted by the government in support of its motion for summary judgment and was stamped with a certified mail tracking number; (2) an IRS mail log which states, "Statutory notices of deficiency for the year(s) indicated have been sent to the following taxpayers," was dated February 27, 2004, and contains Mr. Dickert's name, his Old Town, Florida address, and the same certified mail tracking number as the notice of deficiency; (3) a "Track & Confirm" printout from the United States Postal Service for the same certified mail tracking number, which shows a March 2, 2004, delivery date; and (4) evidence of Mr. Dickert's last known address in Old Town, Florida. Based on this record evidence, we find no error (plain or otherwise) in the district court's conclusion there was sufficient proof the notice of deficiency was properly mailed via certified mail to Mr. Dickert's last known address.

Mr. Dickert also disputes that the government sent him a notice and demand for tax. *See* 26 U.S.C. § 6303(a) (requiring notice of assessment of a tax and demand for payment to be sent within 60 days of assessment). *See also id.* at § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after

demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property . . . belonging to such person.").

The Form 4340 contains an entry from July 19, 2004 (the date of the assessment) for "Statutory Notice of Balance Due," and in his first declaration, IRS Officer J.C. Slate represented that this entry signified that Mr. Dickert was sent a notice of the assessment on that date. This was "presumptive proof" that the notice and demand were mailed in accordance with the statute, regardless of whether the government is able to produce an actual copy of the notice and demand. *See United States v. Chila*, 871 F.2d 1015, 1018–19 (11th Cir. 1989) (holding that where the taxpayer "fail[s] to establish affirmatively that the notice was not sent," the government's submission of a Form 4340 certifying the mailing of such a notice was "clear" evidence that such notice was sent and was sufficient to support a grant of summary judgment). Furthermore, Mr. Dickert offers no support for his contention the information represented in the Form 4340 or Officer Slate's declaration is inaccurate or erroneous.[1]

We are also unpersuaded by Mr. Dickert's claim that the Form 4340 is untrustworthy because it contains an entry for "Substitute for Return," as the government conceded it did not prepare a physical return when it calculated Mr.

---

[1] Notably, a "lack of notice under Section 6303(a) deprives the government of administrative remedies only," and is not a prerequisite to filing a civil action. *Chila*, 871 F.2d at 1019 (internal quotation marks and citation omitted).

Dickert's 1999 tax liability.  As noted by the district court in its summary judgment order, as well as its order denying Mr. Dickert's motions to compel discovery, the IRS is not required under 26 U.S.C. § 6020(b) to prepare or file a substitute tax return in order for a valid assessment to be made.  *See United States v. Stafford,* 983 F.2d 25, 27 (5th Cir. 1993) ("[A]lthough the section [§ 6020(b)] authorizes the Secretary to file for a taxpayer, the statute does not require such a filing, nor does it relieve the taxpayer of the duty to file.").  In its opposition to Mr. Dickert's motion to compel, the government explained that no such substitute return was prepared, but that the IRS did calculate Mr. Dickert's income tax liability using procedures authorized by § 6020(b).  The mere fact that the Form 4340 contained a notation for "Substitute for Return" is insufficient to cast any doubt on its validity.

As for Mr. Dickert's arguments that Officer Slate's declaration is inadmissible under Federal Rule of Civil Procedure 56(c)(4) and that Form 4340 is inadmissible hearsay, we find no plain error or manifest injustice in the district court's findings that the "materials which Revenue Officer Slate discusses, and which are attached to Slate's affidavit, are business records within the meaning of the Federal Rules of Evidence," and that the "Form 4340 is also admissible as a self-authenticating public record."  Officer Slate declared that he/she reviewed the IRS' records (which are maintained by the IRS in the normal course of business) concerning Mr. Dickert, and that the Form 4340 was "a compilation of data from

12

information transmitted by a person with the knowledge of those matters at or near the time the events recorded occurred.  The recording of this data is a regularly conducted activity of the IRS, and the records are maintained in the course of the IRS' regularly conducted business activities."   Based on Officer Slate's declaration, we find that the district court did not err when it determined that the challenged documents were admissible under the business record and public record exceptions to the hearsay rule.  *See Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1259 (11th Cir. 1983) ("To be admitted under [the business record] exception, the person who actually prepared the documents need not have testified so long as other circumstantial evidence and testimony suggest their trustworthiness.").  *See also Hughes v. United States*, 953 F.2d 531, 539 (9th Cir. 1992) (finding Form 4340 met the public records hearsay exception set forth in Federal Rule of Evidence 803(8)).

Furthermore, Mr. Dickert's additional argument—that the Form 4340 is inadmissible because it was prepared expressly for this litigation—finds no support in the record: the government interrogatory response Mr. Dickert relies on shows only that the Form 4340 was requested from an attorney in the Office of Division Counsel of the IRS for the purpose of the litigation, not that the Form 4340 was itself created for this litigation.

## C

Mr. Dickert also challenges the accuracy of the government's tax assessment. The government admits that, in calculating Mr. Dickert's tax liability for tax year 1999, "the IRS included as income the total amount of the proceeds that third parties had reported as having paid to [Mr. Dickert] from the sale or exchange of securities, without any reduction for a cost basis." Mr. Dickert, however, was provided numerous opportunities to dispute this calculation at the agency level and failed to do so. And when this action was instituted in federal court—more than seven years after Mr. Dickert was first given notice by the IRS of its proposed taxes and penalties—Mr. Dickert was again provided additional opportunities to present evidence to dispute this calculation.

In his opposition to the government's motions for summary judgment and to strike, Mr. Dickert proffered two of declarations of his own representing that he called his broker, Edward Jones, to inquire as to the cost basis for the stocks sold in 1999 and that he received the submitted document(s) in response to his request. Mr. Dickert was first made aware of the evidentiary deficiencies of his proffered evidence of cost basis in the government's motion to strike, and was again warned of these deficiencies in the magistrate judge's order requesting supplemental filings.

14

We do not think the district court plainly erred in striking the initial Edward Jones document on the grounds it was not properly authenticated by an affidavit from an employee of Edward Jones, it was not self-authenticating, and, as it purported to establish a cost basis for the securities sold in 1999, it was also pure hearsay. *See* Fed. R. Evid. 901(a); Fed. R. Evid. 902. *See also Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment") (internal quotation marks and citation omitted). In sum, we affirm the district court's grant of summary judgment in favor of the government, and its denial of Mr. Dickert's motion for summary judgment.

Furthermore, we find no abuse of discretion in the district court's denial of the motion for reconsideration, in which Mr. Dickert presented new documents from Janus Fund and additional documents from Edward Jones. Mr. Dickert's arguments that this "evidence in admissible form was unavailable to [him], a *pro se* litigant unfamiliar with admissible forms of evidence, at the time he opposed the government's motion for summary judgment," and that "he did not have full notice of the opportunity to present the evidence in admissible form," are particularly unpersuasive in light of the procedural history of this case. Mr. Dickert obtained certified copies of documents from his brokers in April of 2012, at which time the government's motion for summary judgment was pending and his *own* motion for

15

summary judgment had only recently been filed. Moreover, the magistrate judge held a hearing—which Mr. Dickert failed to attend—and issued an order—which Mr. Dickert failed to respond to—specifically requesting supplemental evidence. The magistrate judge issued a report recommending that the government's motions to strike and summary judgment be granted, and Mr. Dickert failed to object.

## D

The remainder of Mr. Dickert's arguments on appeal warrant little discussion as they are waived, undecipherable, and/or lack merit.

Mr. Dickert challenges the magistrate judge's denial of his motions to compel production of certain documents and answers to interrogatories, but he did not object to the district court. When a magistrate judge hears and decides a nondispositive matter, a party may serve and file objections to the magistrate judge's order within 14 days after being served with a copy of it. *See* Fed. R. Civ. P. 72(a). The district court then considers timely objections and modifies or sets aside any part of the order that is clearly erroneous or contrary to law. *See id.* Where, as here, a party fails to timely challenge the magistrate judge's nondispositive order before the district court, he waives his right to appeal those matters. *See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1286 (11th Cir. 2003).

16

Mr. Dickert also argues that because the government admits it did not file a substitute tax return pursuant to 26 U.S.C. § 6020(b), the $34,436.96 "failure-to-pay" penalty assessed in November of 2007 is not authorized under 26 U.S.C. § 6651(a)(2) or (3). As Mr. Dickert notes, "there is no support from the record to conclude under which [Internal Revenue Code] section the 'failure to pay' penalty was assessed." But the lack of record evidence is not surprising, as a careful review of the record shows that Mr. Dickert did not challenge the government's imposition of a failure-to-pay penalty before the district court. Thus, this issue is waived on appeal. *See Access Now, Inc.*, 385 F.3d at 1331. *See also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (noting that while *pro se* pleadings are liberally construed, issues not raised in the district court are normally deemed waived).

Finally, Mr. Dickert argues that the district court should have taken into consideration his monthly income from social security and monthly living expenses (for which he submitted a declaration as evidence) in order to modify or amend the judgment so as to avoid the hardship he would endure through foreclosure and sale of the property. Mr. Dickert presented this argument below for the first time in his motion for reconsideration, which was filed after the district court granted summary judgment for the government and after it granted the government's unopposed motion to amend the judgment to specify the amount of

17

Mr. Dickert's unpaid federal income tax liability, order the tax lien on the property foreclosed, and permit the property to be sold upon a motion for order of sale by the government. A motion for reconsideration is not the proper vehicle for presenting new evidence and raising arguments that could have been presented or raised prior to the entry of judgment. *See* Fed. R. Civ. P. 59(e); *Michael Linet, Inc.*, 408 F.3d at 763. We find no abuse of discretion in the district court's denial of Mr. Dickert's motion for reconsideration on this argument.

## III

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the government.

**AFFIRMED**.